United States District Court for the DISTRICT of HAWAII

Case Number 04-00644DAE-LEK

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAY 3 0 2007

at ___ o'clock and ___ min ___ M
SUE BEITIA, CLERK

JOSEPH R. THAMES          , Plaintiff,

                    v.                    NOTICE OF APPEAL

DEBORAH Y. MILLER          , Defendant.

Notice is hereby given that JOSEPH R. THAMES in the above named case hereby appeal to the United States Court of Appeals for the
Federal Circuit from the 9TH CIRCUIT COURT from Finding of Fact and Conclusions of Law entered in this action on 5/02/2007, (May 2, 2007) (date).
Dated May 30, 2007 in Honolulu, Hawaii.

(Signature of appellant)

P.O. Box 674
Kailua, Hawaii 96734
(808) 554-8082

(Address of appellant)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

JOSEPH R. THAMES,                    )    CIVIL NO. CV04-00644 DAE/LEK
                                     )
            Plaintiff.               )
                                     )
      vs.                            )
                                     )
DEBORAH Y. MILLER,                   )
                                     )
            Defendant.               )
                                     )
_____    )

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court tried this case on April 24, 2007. The parties appeared pro se, and they served as the only witnesses in the trial. The Court has considered the record evidence submitted, made determinations as to relevance and materiality, assessed the credibility of the witnesses, and ascertained the probative significance of the evidence presented. Upon consideration of the above, the Court finds the following facts by a preponderance of the evidence, and in applying the applicable law to such factual findings, makes the following conclusions of law.

   1.    The instant lawsuit was filed on October 29, 2004.

   2.    The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391.

3.    Joseph R. Thames, pro se, brought this action against Deborah Y. Miller, pro se, based on breach of contract and breach of duty of good faith and fair dealing.

4.    At the time that the Complaint was filed, Plaintiff was domiciled in North Carolina. Defendant was domiciled in Massachusetts. The original complaint stated a cause of action for a property located in Kailua, Hawaii. The First Amended Complaint states that Defendant resides and/or does business in Kailua, Hawaii.

5.    At the time that the Complaint was filed, Plaintiff alleged over $75,000.00 in damages for property.

6.    According to Magistrate Judge Leslie Kobayashi's ("Magistrate Judge") Order Granting in Part and Denying in Part Plaintiff's Motion to Take Leave ("Order"), Plaintiff was allowed to amend his Complaint to delineate specifically the amount in dispute. In the Order, the Magistrate Judge dismissed all claims related to a property that was the matter of a dispute litigated in state court.

7.    Removing the property from the equation, the amount in dispute was pared down to $3,290.00 in various loans.

8.    Based on the Magistrate Judge's Order, Plaintiff filed a First Amended Complaint on February 17, 2006, demanding judgment in the amount of

$3,290.00 plus interest and costs.  Plaintiff provided the following breakdown for the loans:

    (a)    $40.00 in administrative charges for a returned check

    (b)    $500.00 for a trip to the east coast

    (c)    $1,500.00 in utilities from December 1998 to October 1999

    (d)    $1,250.00 for unpaid loans, including:

        (1)    $200.00 in car repair parts

        (2)    $200.00 for emergency funds not replaced

        (3)    $100.00 for money taken out of a joint account

        (4)    $100.00 for a loan in Boston (ATM)

        (5)    $450.00 for a loan in Boston (ATM)

        (6)    $100.00 for expenses to be paid for a client's returned check

        (7)    $100.00 for a check from Defendant

    9.    In his First Amended Complaint, Plaintiff based his causes of action on breach of contract and breach of covenant of good faith and fair dealing.

    10.    In his First Amended Complaint, Plaintiff made a jury demand.

    11.    Plaintiff had not requested a jury trial in his original Complaint, and this Court's docket indicated that Plaintiff had not made a jury demand.

12. Plaintiff was aware that a bench trial was set to proceed on April 24, 2007. An example of one occasion during which Plaintiff was informed that this case was set for a bench trial and that voir dire and jury instructions were not applicable during the June 29, 2005 Rule 16 Scheduling Conference before the Magistrate Judge.

13. Notwithstanding, Plaintiff did not file any objections to the bench trial until the eve of trial, April 23, 2007, at 11:36 p.m. This Court's first opportunity to rule on that objection was at the bench trial, occurring the following morning at 9:00 a.m.

14. During the bench trial, Plaintiff conceded that he was aware of the $3,290.00 at the time that he filed his First Amended Complaint. Plaintiff, furthermore, agreed that the $3,290.00 was included in his original Complaint as part of the over $75,000.00 in dispute, as alleged in paragraph 9.

15. When questioned further, Plaintiff equivocated a bit about whether his original Complaint covered the $3,290.00 in dispute.

16. The Magistrate Judge's Order used the term "add" when she gave Plaintiff permission to amend his Complaint to set forth the $3,290.00 in various loans that he claimed that Defendant owed him. The Court finds, however, that the $3,290.00 already was part of the $75,000.00 plus in damages that Plaintiff sought in his original Complaint.

17.    "If the issues in the original complaint and the amended complaint turn on the same 'matrix of facts,' the demanding party is not entitled to demand a jury trial on the amended complaint." <u>Oliner v. Kontrabecki</u>, No. 06-3787, 2006 WL 3646789, at *1 (N.D. Cal. December 12, 2006) (citation omitted); <u>see also</u> <u>Lutz v. Glendale Union High School</u>, 403 F.3d 1061,1066-67 (9th Cir. 2005); <u>Clement v. Am. Greetings Corp.</u>, 636 F. Supp. 1326, 1334 (S.D. Cal. 1986) ("In general, a jury demand made for the first time in an amended pleading creates a right to a jury trial only as to <u>new issues of fact</u> raised by the amended complaint.") (emphasis added).  Where new legal theories are raised based on facts previously pled, a new issue has not been raised that would permit a jury trial. <u>See</u> <u>Clement</u>, 636 F. Supp. at 1334.

18.    Although Plaintiff equivocated a bit when questioned further, this Court finds that the facts speak for themselves.  Plaintiff did not make a jury demand in his original Complaint, even though he admitted that he was aware of the $3,290.00 when he filed his Complaint.  Plaintiff, though wavering a bit in his testimony, agreed that the $3,290.00 was included in his original Complaint as part of the over $75,000.00 in dispute, as alleged in paragraph 9.  In addition, the Magistrate Judge did not grant Plaintiff permission to make a jury demand in his First Amended Complaint.  Finally, Plaintiff did not file an objection to the bench trial until the eve of trial.

19.    Based on the record and on Plaintiff's testimony, the Court finds that the $3,290.00 amount was included in his original Complaint requesting over $75,000.00 in damages.

20.    Even if that amount was not included, this Court still would find that Plaintiff was not entitled to a jury trial because the original complaint and the amended complaint turned on the same matrix of facts, i.e., the dispute about what monies/property Defendant owed Plaintiff as a result of their failed relationship. See Oliner, 2006 WL 3646789, at *1. In other words, Plaintiff's new breach of contract theories were based on the same facts previously pled in his original Complaint.

21.    Moreover, the Court finds that the Magistrate's use of the term "add" was made in error because Plaintiff did not actually add a new claim to the Complaint. Rather, this Court finds that Plaintiff clarified and specifically delineated part of a claim that he alleged in his original Complaint.

22.    In addition to DENYING Plaintiff's Objection To Bench Trial, the Court ruled on Plaintiff's Motion for Continuance, which also was filed the day before trial at 3:26 p.m. This Court DENIED that motion for the reasons stated on the record.

23.    The Court also ruled on Plaintiff's Motion for Reconsideration of Magistrate Judge Order Denying Plaintiff's Motion for Default Judgment and

Discovery Motions, which were filed on April 21, 2007 and April 20, 2007 respectively. This Court DENIED both motions for the reasons stated on the record.

    24.   Additionally, the Court ruled on all motions in limine.

    (a)   The Court GRANTED Defendant's motion in limine to preclude Plaintiff from producing any testimony or evidence pertaining to a property that was not in dispute.

    (b)   The Court DENIED Plaintiff's motion in limine concerning Defendant's use of exhibits and demonstrative aids at trial.

    (c)   The Court GRANTED Plaintiff's motion in limine preventing Defendant's mother from testifying per a notarized statement.

    (d)   The Court DENIED Plaintiff's motion in limine to exclude Defendant as a witness.

    (e)   The Court GRANTED Plaintiff's motion in limine to preclude Defendant from referring to a property that was not in dispute.

    (f)   The Court GRANTED in part and DENIED in part Plaintiff's motion in limine to preclude Defendant from making allegations of physical and/or mental abuse and/or harassment against Plaintiff.

    (g)   The Court DENIED Plaintiff's motion in limine seeking to exclude any and all evidence that Defendant sought to present.

(h)    The Court GRANTED Plaintiff's motion in limine to exclude any deposition testimony for depositions during which he was not present, if any such depositions actually existed.

25.    Each party took the stand as a witness, testifying to each claim related to the $3,290.00 at issue.

26.    Regarding the $40 administrative charge, a woman named Julia Coelho wrote a check to Defendant for $5,080.00. Plaintiff's Ex. 2. Defendant endorsed the check to Plaintiff. The check bounced. Defendant had accepted the check in "good faith," and she was not responsible for the bank's failure to honor it. Plaintiff incurred $40.00 in administrative fees as a result of the bounced check. Julia Coelho reimbursed Plaintiff for the checks plus interest through payment in the form of two checks. Defendant's Ex. 1. One check was in the amount of $2,600.00 and the other was in the amount of $2,500.00, for a total of $5,100.00. Def. Ex. 1.

Based on Defendant's credible testimony, the Court finds that Defendant had no understanding that she would pay Defendant for any fees incurred for the bounced check. The Court further finds that Plaintiff was reimbursed in full for the bounced check.

27.    Regarding the $500.00 trip to the east coast, the Court finds that Defendant made no promise to reimburse Plaintiff for the $500.00 that Plaintiff

8

gave to Defendant for the purpose of flying through California and then to Las Vegas, NV to meet Plaintiff's family. During that trip, Defendant also visited her family in Boston. Defendant made no promises to pay Plaintiff to fly him to Boston to meet her family.

28. Regarding the $1,500.00 in utilities from December 1998 to October 1999, Plaintiff and Defendant submitted numerous accounting sheets that were created at the time of the accounting, which detail utility payments and checks submitted in support. Pl. Ex. 4; Def. Ex. 2, 3. There are two exceptions: first, Defendant's summary of those accounting sheets was made in preparation for trial, not at the time of the accounting, and, second, Defendant's notes on a couple of the accounting sheets, which indicate that she paid the utility bills with checks for which Plaintiff was supposed to reimburse her, were made in preparation of trial.

The Court finds that those bills and the accounting sheets indicate that, at times, Plaintiff paid the utility bills and, at times, Defendant paid the utility bills. "JT" on the accounting sheets stands for Joseph Thames, and "DM" stands for Deborah Miller.

The Court finds no evidence of an agreement between Plaintiff and Defendant, indicating that Plaintiff gave Defendant money to pay the utility bills with an agreement to pay Plaintiff back. The accounting sheets and the

9

checks indicate that Plaintiff and Defendant shared the cost of the utilities and that each party bore an equal share of the costs. There is no evidence that Defendant owes Plaintiff $1,500.00 for utility bills paid between the months of December 1998 to October 1999 and, in fact, Plaintiff actually may owe Defendant money.

The Court also finds that Plaintiff's references to certain exhibits that were not admitted into evidence do not indicate that Plaintiff gave Defendant money to pay utility bills, for which Defendant still owes Plaintiff. Notably, the names on the checks changed with each check, some checks were made out to Defendant and others to third parties, the signatory's name differed with each check, the checks were made out for large sums of money, such as $8,000.00 and $19,000.00, and some were grouped together with letters concerning the property that is not at issue. Although Plaintiff claimed that those exhibits demonstrate that Plaintiff gave Defendant money to pay for utility bills, the Court finds, based on its review of the exhibit and Defendant's credible testimony, that those checks were used to pay the mortgage for the property that was litigated in state court and that is not in dispute here.

29.    Regarding the $1,250.00 in unpaid loans, the Court makes the following findings:

(a)    The Court finds that there was an agreement for Defendant to pay Plaintiff $200.00 for car repair parts. Pl. Ex. 1. Nonetheless, the

Court finds Defendant's testimony credible that she already paid him for those parts. By contrast, the Court finds Plaintiff's testimony that Defendant did not pay him to be not credible. Significantly, Plaintiff bore the burden of proving that Defendant had not paid him for those parts, and he provided no reason for the Court to doubt Defendant's testimony.

(b)    $200.00 in emergency funds. Based on the parties' testimony, the Court finds that there was an agreement to replace money removed from an emergency fund basket, and that both parties routinely removed and replaced money from that basket. Notwithstanding, Plaintiff provided no evidence that Defendant removed money from the basket without replacing it, and the Court finds Defendant's testimony to be more credible than Plaintiff's in that she replaced all money that she removed and that she does not owe Plaintiff any money from the basket.

(c)    $100.00 from a joint account. The Court finds that there was a joint account with the Hawaii National Bank between Plaintiff and Defendant. Pl. Ex. 5; Def. Ex. 4. Based on Defendant's credible testimony, the Court finds that, although Defendant opened the account in both of the parties names, per Plaintiff's idea, Defendant predominantly, if not solely, used the account. The evidence indicates that Defendant used the account to pay rent, among other things. Def. Ex. 4.

11

The Court finds that there is no evidence to prove that, even if Defendant had withdrawn the $100.00, Defendant promised to reimburse Plaintiff for it. On the contrary, the testimony indicates that Defendant was the only (or, at least, the predominant) person who deposited and withdrew money from that account. As this was a joint account, no illegality was involved in withdrawing funds.

(d)    $100.00 and $450.00 loan in Boston. The Court finds that Defendant had agreed to pay Plaintiff back for the $100.00 and $450.00 loans, which money came from ATM machines in Boston. Pl. Ex. 1. Notwithstanding, based on a check for $550.00, which Defendant wrote to Plaintiff, and Defendant's credible testimony, the Court finds that Defendant already paid Plaintiff for the $100.00 and $450.00 loans from Boston. Def. Ex. 4.

(e)    $100.00 to be paid for a third party's returned check. Plaintiff presented no evidence to support his allegation that he loaned Defendant $100.00 to help Defendant cover some expenses for which she was supposed to cover with a $100.00 check from a third party that bounced. Based on Defendant's credible testimony that she has no knowledge of such an incident, her denial of owing Plaintiff $100.00, and Plaintiff's failure to submit any evidence to prove such a claim, the Court finds no evidence of a promise or an agreement to pay Plaintiff $100.00 for money loaned to her.

12

(f)     $100.00 for a check that Plaintiff wrote to Defendant.

Plaintiff presented no evidence to support his claim that Defendant owed him $100.00 for a check that Plaintiff wrote her. Defendant denied that she owed Plaintiff $100.00 for a check given to her, and Plaintiff did not produce a copy of the check or any other evidence that indicates that he wrote her that check. Based on that, the Court finds no evidence of a promise or an agreement to pay Plaintiff $100.00 for a check that Plaintiff wrote Defendant.

## CONCLUSIONS OF LAW

1.     Based on the foregoing facts, the Court concludes that Plaintiff has failed to prove a claim of breach of contract and breach of a duty of good faith and fair dealing.

2.     The Court concludes that Plaintiff has presented no evidence of an agreement, written or oral, or of a promise to pay Plaintiff for the majority of the claimed loans. See Durette v. Aloha Plastic Recycling, Inc., 100 P.3d 60, 74 (Haw. 2004) (indicating the type of evidence that must be presented to prove the existence of a contract); see also United Public Workers, AFSCME, Local 646, AFL-CIO v. Dawson Intern., 149 P.3d 495, 509 (Haw. 2006) (noting that there must be a meeting of the minds and mutual assent or intent to accept to form a contract); Douglass v. Pflueger Hawaii, Inc., 135 P.3d 129, 134 (Haw. 2006) (providing the elements for an oral contract to be enforceable, i.e., offer,

acceptance, and consideration); <u>Gonsalves v. Nissan Motor Corp. in Haw.</u>, 58 P.3d 1196, 1211 (Haw. 2002) (providing the elements for promissory estoppel). Specifically, those loans include the $40.00 administrative fee; the $500.00 trip to the east coast; the $1,500.00 in utility bills; and a portion of the $1,250.00 in unpaid loans, namely, the $200.00 in emergency funds, the $200.00 for the car repair parts, the $100.00 from the joint account, the $100.00 to be paid for a third party's returned check, and $100.00 for a check that Plaintiff wrote to Defendant.

      3.    Even where such a written agreement existed, as in the case of the $100.00 and $450.00 in loans from ATM machines in Boston, the Court concludes, based on the testimonial and documentary evidence, that Defendant already paid Plaintiff for those loans. Thus, even in the few instances where Plaintiff proved that such a contract existed, Plaintiff failed to prove that Defendant failed to perform according to the contract. <u>See</u> <u>Warner v. Denis</u>, 933 P.2d 1372, 1381 (Haw. Ct. App. 1997) ("It is a basic principle of contract law that the promisor ordinarily is bound to perform his agreement according to its terms or, if he unjustifiably fails to perform, to respond in damages for his breach of the contract.") (citation and internal quotation marks omitted) (brackets omitted). Thus, the Court concludes that there is no evidence of a breach of contract.

4.      The Court also concludes that Plaintiff failed to prove a breach of a duty of good faith and fair dealing because, even where a contract existed, he provided no evidence that indicated that he was deprived of the benefit of the agreement. See Best Place Inc. v. Penn Am. Ins. Co., 920 P.2d 334, 338 (Haw. 1996).

5.      Finally, the Court concludes that Plaintiff has failed to maintain any claims that would justify an award of damages, compensatory, punitive, or otherwise. Notably, Plaintiff made general allegations of malice and oppression under the "Hawaii Revised States and the Federal Statutes," thus entitling him to punitive damages. Hawaii permits an award of punitive damages in breach of contract cases. See Cusson v. Maryland Cas. Co., 735 F. Supp. 966, 970 (D. Haw. 1990). Still, punitive damages only may be awarded to punish a defendant for "aggravated or outrageous misconduct" and to deter the defendant from similar conduct in the future. Lee v. Aiu, 936 P.2d 655, 670 (Haw. 1997). Because Plaintiff provided no evidence of aggravated or outrageous misconduct that would warrant an award of punitive damages, the Court concludes that Plaintiff has no claim to punitive damages.

Any finding of fact which may be deemed, in whole or in part, more properly a conclusion of law shall be deemed as such, and any conclusion of law

which may be deemed, in whole or in part, more properly a finding of fact shall be deemed as such.

There being no just reason for delay, the Court hereby directs entry of final judgment in favor of Defendant and against Plaintiff.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, May 2, 2007.

_____
David Alan Ezra
United States District Judge

Joseph R. Thames vs. Deborah Y. Miller, Civil No. 04-00644 DAE/LEK; FINDINGS OF FACT AND CONCLUSIONS OF LAW